UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MANUEL LUCERO et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. 23-10088-LTS |
| | ) | |
| KEVIN COPPINGER et. al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

ORDER ON DEFENDANTS' MOTION TO DISMISS (DOC. NO. 45)

December 15, 2023

SOROKIN, J.

Plaintiffs sued Defendants over conditions of confinement at Essex County Correctional

Facility ("ECCF"). Defendants moved to dismiss Plaintiffs' Complaint, arguing that the Court

lacked subject matter jurisdiction over the Plaintiffs' claims, and in the alternative arguing that

Plaintiffs had failed to state a claim upon which relief can be granted. For the reasons stated

below, the Court ALLOWS the Motion to Dismiss.

I.      BACKGROUND

        A.      Procedural Posture

In January 2023, fifteen Plaintiffs sued the following Defendants in their individual and

official capacities: 1) Kevin Coppinger, Essex County Sheriff; 2) George Glynos, ECCF

correctional officer; 3) "John Doe" Udom, ECCF medical director and facility physician; and

4) "John Doe", ECCF Assistant Superintendent. Doc. No. 1. They alleged various violations of

federal law arising from ECCF's COVID-19 policies and other policies. Id. Initially, the Court

denied Plaintiff Manuel Lucero's motion for class certification and denied without prejudice his

emergency motion for a temporary restraining order. Doc. No. 7. The Court further required each Plaintiff to either pay the filing fee or file an application to proceed without paying costs or fees along with a copy of the filer's prison account statement. Id. Ultimately, on May 1, 2023, the Court allowed in forma pauperis applications by nine Plaintiffs and dismissed six Plaintiffs for failure to prosecute the action. Doc. No. 30 at 3. On August 28, 2023, Defendants filed their Motion to Dismiss, asserting defenses under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Doc. No. 45. When no Plaintiff filed either a timely response or a motion for more time, the Court ordered Plaintiffs to respond by October 11, 2023, and warned Plaintiffs that their failure to respond to Defendants' Motion would result in their dismissal from the case. Doc. No. 47.  Later the Court extended the deadline for Plaintiffs to respond, to ensure Defendants had sent their motion papers to each remaining Plaintiff. Doc. No. 50.

The deadline for Plaintiffs' responses has since passed, and only three Plaintiffs have responded to the Court's Order and opposed the Motion to Dismiss. The non-responding Plaintiffs are Stafford Gravely, Eric Hill, Justin Maclean, Daniel P. McNeil, Jose Peralla-Alejo, and James William. The claims of each of the six non-responding Plaintiffs are hereby DISMISSED. Link v. Wabash R.R. Co., 370 U.S. 626, 630–31 (1962); Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003).

That leaves the claims of Manuel Lucero, Robert Blanchette, and Alvah Pike, each of whom has responded. Of course, they must individually assert their own legal rights and cannot rest their claims to relief on the legal rights of other men detained or incarcerated at ECCF. Warth v. Seldin, 422 U.S. 490, 499 (1975). Hereafter, when the Court refers to "Plaintiffs," it refers to Lucero, Blanchette and Pike.

B.     Facts

Plaintiffs are pretrial detainees at ECCF, Doc. No. 1 ¶¶ 5, 6, 10, housed in an open

dormitory unit called Voke #3, id. ¶ 38. Their claims arise out of policies implemented during

the COVID-19 pandemic. To quell the spread of COVID-19, the Essex County Sheriff's

Department implemented a lockdown policy of all individuals who were possibly exposed to the

virus, including Plaintiffs. Id. ¶ 43. The lockdown policy included the removal of Plaintiffs'

access to the ECCF law library, religious services, physical visits by attorneys, and non-contact

visits with family. Id. ¶¶ 44–46. Upon initial entry into the jail, Plaintiffs also had limited access

to recreation, showers, mail, and telephones. Id. ¶ 48.

Plaintiffs allege these conditions have resulted in the "development or exacerbation of

anxiety disorders, traumatic stress, mental anguish, and emotional distress," as well as

"respiratory distress, pain and cramping from the small quarters, lack of exercise, and absence of

sufficient furnishings" and "influenza-like symptoms." Id. ¶¶ 49–50. Plaintiffs jointly submitted

grievances to Defendant Glynos, id. ¶ 28, and grievance appeals to Assistant Superintendent

Doe, id. ¶ 30. They also submitted a letter and grievance to Defendant Coppinger. Id. ¶ 32.

Plaintiffs' Complaint identified nine claims brought pursuant to 42 U.S.C. § 1983 and the

Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc ("RLUIPA").

Plaintiffs sought injunctive relief and compensatory damages on all claims, except for their

RLUIPA claim, which only sought injunctive relief. Doc. No. 1 ¶ 65.

II.     LEGAL STANDARD

A pro se plaintiff's pleadings are held to "less stringent standards than formal pleadings

drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). A court, however, will not

"conjure up unpled allegations" to establish jurisdiction or to state an actionable claim.
McDonald v. Hall, 610 F.2d 16, 19 (1st Cir. 1979).

In evaluating a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil
Procedure, the Court must determine whether the facts as alleged in the complaint, "taken at face
value," support subject matter jurisdiction. Gordo-González v. United States, 873 F.3d 32, 35
(1st Cir. 2017). The plaintiff bears the burden of proving subject matter jurisdiction. Aversa v.
United States, 99 F.3d 1200, 1209 (1st Cir. 1996). In resolving a motion to dismiss under Rule
12(b)(1), the district court must construe the complaint liberally, treating all well-pleaded facts as
true and indulging all reasonable inferences in favor of the plaintiff. Murphy v. United States, 45
F.3d 520, 522 (1st Cir. 1995). If subject matter jurisdiction is lacking, however, the court cannot
proceed further. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks
subject-matter jurisdiction, the court must dismiss the action.").

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a
complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that
is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A pleading must
offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of
action." Morales–Tañon v. P.R. Elec. Power Auth., 524 F.3d 15, 18 (1st Cir. 2008) (quoting
Twombly, 550 U.S. at 555). For the purposes of a motion to dismiss, the district court accepts all
factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's
favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).

"When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court,
absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." Ne.

Erectors Ass'n of BTEA v. Sec'y of Labor, Occupational Safety & Health Admin., 62 F.3d 37,

39 (1st Cir. 1995).

III.     DISCUSSION

    A.     Defendant's Motion to Dismiss Under Rule 12(b)(1)

Defendants contend the Court lacks subject matter jurisdiction over Plaintiffs' claims

against Defendants in their official capacities insofar as these claims seek money damages.

Defendants are correct. The Supreme Court has interpreted the Eleventh Amendment to bar

private suits against a state in federal court, absent consent to suit by the state or valid

congressional abrogation of this immunity. See Alden v. Maine, 527 U.S. 706, 754 (1999);

Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). This immunity extends to

damages claims against state officers acting in their official capacities. Will v. Mich. Dep't of

State Police, 491 U.S. 58, 71 (1989).

Congress did not abrogate Eleventh Amendment immunity by enactment of 42 U.S.C.

§ 1983 or RLUIPA. Id. at 67; Sossamon v. Texas, 563 U.S. 277, 287 (2011). Nor has the

Commonwealth of Massachusetts consented to lawsuits brought under either federal statute.

Coggeshall v. Mass. Bd. of Registration of Psychs., 604 F.3d 658, 662 (1st Cir. 2010); Cryer v.

Spencer, 934 F. Supp. 2d 323, 332 (D. Mass. 2013).

However, the Eleventh Amendment does not bar official-capacity claims against state

officials where the plaintiff seeks prospective injunctive relief. Ex parte Young, 209 U.S. 123,

159–60 (1908). Plaintiffs' claims against Defendants in their official capacities, insofar as they

seek anything other than prospective injunctive relief, are therefore DISMISSED for lack of

subject matter jurisdiction.

B.        Defendant's Motion to Dismiss Under Rule 12(b)(6)

Plaintiffs have also sued Defendants in their individual capacities. To impose individual

liability on a state official in a § 1983 action, Plaintiffs must plausibly allege either (a) individual

actions by the official violating Plaintiffs' federal rights, or (b) "that one of the supervisor's

subordinates abridged the plaintiff's constitutional rights and the supervisor's action or inaction

was affirmatively linked to that behavior in the sense that it could be characterized as

supervisory encouragement, condonation, or acquiescence or gross negligence amounting to

deliberate indifference." Guadalupe-Baez v. Pesquera, 819 F.3d 509, 515 (1st Cir. 2016)

(cleaned up). Here, Plaintiffs fail to allege any specific actions by any individual Defendant that

would either violate Plaintiffs' Constitutional (or federal statutory) rights or provide a basis for

supervisory participation in a violation of rights committed by a subordinate. For this reason

alone, none of Plaintiffs' claims for individual liability plausibly state a claim.

All nine of the claims fail for another overarching reason. Plaintiffs fail to allege

plausibly any facts specific to any one of them regarding the application of the challenged

practices to them, the harm that they endured, or indeed anything specific or non-conclusory. For

this reason, none of the claims state a plausible claim for damages or prospective injunctive

relief.[1]

Accordingly, for these reasons, the Court ALLOWS the Motion to Dismiss and

DISMISSES the Complaint. Nonetheless, the Court proceeds to analyze each claim individually

as well.

---

[1] The Court also notes that, excepting the Sheriff, none of the Defendants appear to possess the authority to deliver the prospective injunctive relief sought in any event. See Doc. No. 1 ¶¶ 21–23 (identifying Defendants as a grievance officer, a grievance supervisor with some policy oversight, and a facility physician).

1.   Access to Counsel

Plaintiffs allege that Defendants have deprived them of their right to effective legal representation by suspending in-person visitation pursuant to the COVID-19 lockdown policy. A detained person awaiting trial may assert a violation of his Sixth Amendment right if "counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." United States v. Cronic, 466 U.S. 648, 659 n.25 (1984). Other courts have held that the Sixth Amendment does not protect the right for a detained person to meet with his lawyer in-person. See United States v. Romero-Romero, No. 20-00382, 2021 WL 3025139, at *1 (D.P.R. July 15, 2021) (holding that electronic communication between lawyer and detained client satisfied Sixth Amendment); Rouse v. Washington, No. 20-11409, 2021 WL 2434196, at *6 (E.D. Mich. June 15, 2021) (applying Cronic standard to find that prohibition on in-person legal visits did not constitute a total deprivation of attorney communication); see also McMaster v. Pung, 984 F.2d 948, 953 (8th Cir. 1993) (holding that incarcerated appellant was not denied access to counsel because he could communicate with his attorney by telephone and through mail when he was banned from contact visits in light of his administrative segregation). Here, Plaintiffs allege that they were denied access to in-person meetings with their lawyers. Doc. No. 1 ¶ 45. They have not alleged deprivation of other means of attorney-client communication including video conferencing, telephone conferences, or legal mail. Id. ¶¶ 35–52. They have not pled facts sufficient to plausibly suggest that they were deprived access to counsel under the standard established by Cronic, 466 U.S at 659 n.25. Accordingly, this claim is DISMISSED.

2.   Access to Visitation

Plaintiffs allege that Defendants failed to permit them to have "access to visits of any sort," in violation of Plaintiffs' First Amendment rights to free association. Doc. No. 1 ¶ 57.

"[F]reedom of association is among the rights least compatible with incarceration . . . . Some

curtailment of that freedom must be expected in the prison context." Overton v. Bazzetta, 539

U.S. 126, 131 (2003). An incarcerated person does not have a constitutionally protected interest

in unfettered visitation. Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989). The

Constitution is not offended where reasonable restrictions are placed on visitation in the prison

context. See Wirsching v. Colorado, 360 F.3d 1191, 1198 (10th Cir. 2004) (citing Overton, 539

U.S. at 131).

　　　　Plaintiffs' claim fails for two reasons. First, Rule 8 requires more than a blanket assertion

of denial of "visits of any sort" without any explanation or elaboration of some details about the

application of this alleged policy. Put another way, without further elaboration, this cursory

assertion fails to plausibly state a claim for violation of the First Amendment right to free

association. Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 55 (1st Cir. 2006) (explaining that a

court, when passing upon a motion to dismiss, should not credit "bald assertions, unsupportable

conclusions, periphrastic circumlocutions, and the like.") (quoting Aulson v. Blanchard, 83 F.3d

1, 3 (1st Cir. 1996)).

　　　　Second, prison policies limiting the First Amendment right of association will be deemed

valid if the limiting regulations are reasonably related to legitimate penological objectives.

Turner v. Safley, 482 U.S. 78, 89 (1987). Protecting detainees from a potentially deadly virus

like COVID-19 is undoubtedly a legitimate penological objective. Other courts have held that

prison policies suspending in-person visitation were "reasonably related" to the objective of

containing COVID-19. See, e.g., Pape v. Cook, No. 20-1324, 2021 WL 2186427, at *5–6 (D.

Conn. May 28, 2021) (finding that, in light of the COVID-19 pandemic, the plaintiff "has not

alleged sufficient facts to raise an inference that the visitation restrictions . . . were unreasonably

related to a legitimate goal of protecting the safety and health of visiting family members, staff

and inmates, including him"); Burrage v. Lee Cnty., No. 20-00180, 2021 WL 1343510, at *1

(N.D. Miss. Mar. 23, 2021). For the foregoing reasons, the Court DISMISSES Plaintiffs' First

Amendment free association claim.

### 3.   Free Exercise

Plaintiffs allege that Defendants Glynos, Coppinger, and Assistant Superintendent "John

Doe" violated their First Amendment rights by terminating their access to religious services, as

part of ECCF's lockdown policy. Doc. No. 1 ¶ 58. A plaintiff alleging that a prison policy

burdens his right to freely exercise his religion must show:

> (1) whether there is a valid rational connection between the prison regulation and
> the legitimate government interest put forward to justify it; (2) whether there are
> alternative means of exercising the right that remains open to prison inmates; (3)
> what impact accommodation of the asserted constitutional right will have on guards
> and other inmates; and (4) whether there is an absence of ready alternatives.

Safley, 482 U.S. at 89–90.

This claim also fails for two separate reasons. First, the Court need not accept the

conclusory, unadorned allegations of the Plaintiffs. Aponte-Torres, 445 F.3d at 55. Plaintiffs do

not state a plausible First Amendment claim simply by stating that their jail has terminated

access to in-person religious services, especially in the context of the COVID-19 pandemic. See

Harris v. Polis, No. 20-2999, 2021 WL 3024664, at *4 (D. Colo. June 23, 2021) (dismissing free-

exercise claim when plaintiff "[pled] only as a general matter that access to religious services has

been impacted by the lockdown"). Second, Plaintiffs do not allege any facts related to their

particular religious beliefs, nor do they explain how the lockdown restrictions have substantially

burdened their rights to exercise their beliefs. For the foregoing reasons, the Court DISMISSES

Plaintiffs' First Amendment free-exercise claim.

4. RLUIPA

Plaintiffs allege that Defendants knowingly failed to permit them access to all religious

services, events, or corporate worship, thus imposing a substantial burden on their exercise of

religion, in violation of RLUIPA. A RLUIPA claim differs from a First Amendment free-

exercise claim, in that the former has slightly different elements and a shifting burden of proof.

Spratt v. R.I. Dep't of Corr., 482 F.3d 33, 38 (1st Cir. 2007). To sustain a RLUIPA claim, a

plaintiff must first prove that his religious exercise has been substantially burdened, after which

the onus shifts to the government to show that the burden furthers a compelling governmental

interest and that the burden is the least restrictive means of achieving that compelling interest. Id.

Despite differences in the applicable law, Plaintiffs' RLUIPA claim fails for the same reasons

their First Amendment free-exercise claim failed. Their allegations are too conclusory to be

plausible. And, they have not made the type of allegations describing a substantial burden on

their religious beliefs sufficient to state a claim. Even if Plaintiffs had successfully stated a

plausible claim, there is no individual liability for officers under RLUIPA. Cryer v. Spencer, 934

F. Supp. 2d 323, 333 (D. Mass. 2013) (citing cases from the Third, Fourth, Fifth, Seventh, Tenth,

and Eleventh Circuits holding that personal-capacity claims for monetary damages under

RLUIPA are barred); Troncoso v. Middlesex Sheriff's Off., No. 18-10110, 2018 WL 1783801, at

*2 (D. Mass. Apr. 13, 2018) (same). For the foregoing reasons, the Court DISMISSES Plaintiffs'

RLUIPA claim.

5. Substantial Risk of Serious Harm

Plaintiffs allege that Defendants knowingly permitted a lockdown to continue in

Plaintiffs' overcrowded living spaces, where mitigation was impossible, therefore constituting

deliberate indifference to Plaintiffs' physical wellbeing. The Due Process Clause of the

10

Fourteenth Amendment prohibits states and their subdivisions from acting with deliberate

indifference to a substantial risk of serious harm to the health of a pretrial detainee. Coscia v.

Town of Pembroke, 659 F.3d 37, 39 (1st Cir. 2011).

To determine whether a Fourteenth Amendment violation has occurred, the First Circuit

applies the formulation of the "deliberate indifference" standard announced in Farmer v.

Brennan, 511 U.S. 825 (1994). Burrell v. Hampshire Cnty., 307 F.3d 1, 7 (1st Cir. 2002). To

succeed on a claim under this standard, a plaintiff must satisfy both objective and subjective

inquiries. Id. at 8. First, a plaintiff must show an objectively serious medical need. Id. Second, he

must show "that prison officials possessed a sufficiently culpable state of mind." Id.

### a. Objective Prong

A medical need is serious if it is one that has been diagnosed by a physician as mandating

treatment, or one that is so obvious that even a lay person would easily recognize the necessity

for a doctor's attention. Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990).

Even a significant risk of future harm may constitute a serious medical need. Perry v. Roy, 782

F.3d 73, 78–79 (1st Cir. 2015). Here, Plaintiffs have not alleged that any of them contracted

COVID-19, nor do they plausibly allege that they were at significant risk of future harm. While

there is no doubt COVID-19 can be a serious disease, the Plaintiffs' allegations are woefully thin

because they fail to identify the time period in which the relevant events occurred,[2] or whether

they possessed risk factors that made them particularly vulnerable to the virus. In these

circumstances, without more, Plaintiffs have not plausibly alleged risk of serious harm.

---

[2] The time period is relevant to the Court's analysis, because COVID-19 posed a much different risk in the early days of the pandemic than it does today, thanks to the development of effective vaccines and treatment.

b. *Subjective Prong*

Plaintiffs must also plausibly allege that prison officials (1) were aware that a substantial risk of harm to the detainee existed but disregarded it or (2) drew an inference of substantial risk of serious harm from facts of which they were aware. Burrell, 307 F.3d at 8. Awareness may be inferred if the risk is obvious. Id. Disagreements about proper medical care do not constitute deliberate indifference. Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993) (upholding dismissal of claim with a finding that a physician's rejection of an incarcerated person's desire for physical therapy, drugs, and rest was merely a disagreement about the proper course of treatment as opposed to deliberate indifference).

Plaintiffs' allegations fail to plausibly support the assertion of deliberate indifference. The Complaint itself alleges that Defendants took affirmative steps to try to control the spread of COVID-19, by reducing detainees' exposure to new groups of people, and by restricting or eliminating group activities. Doc. No. 1 ¶¶ 45–46. The totality of the non-conclusory factual allegations fails to plausibly allege deliberate indifference. Moreover, where prison officials have enacted COVID-19 mitigation measures, courts have rejected claims that they acted recklessly or with deliberate indifference. See e.g., Valentine v. Collier, 993 F.3d 270, 283 (5th Cir. 2021); Hope v. Warden York Cty. Prison, 972 F.3d 310, 330 (3d Cir. 2020); Swain v. Junior, 961 F.3d 1276, 1287 (11th Cir. 2020); Robertson v. Hazlewood, 628 F. Supp. 3d 381, 385 (D.N.H. 2022); Grinis v. Spaulding, 459 F. Supp. 3d 289, 292 (D. Mass. 2020). The measures taken in cases like these were similar to the measures taken here. See, e.g., Robertson, 628 F. Supp. 3d at 385 (describing prison's COVID-19 policies, which included limiting incarcerated people's access to group activities, services, and programs to control the spread of the virus). For the foregoing reasons, the Court DISMISSES Plaintiffs' claim of substantial risk of serious harm.

6.   Punishment of Pretrial Detainees

Plaintiffs allege Defendants "did knowingly fail to correct violations of several minimum standards of health, safety, and sanitation adumbrated in the Code of Massachusetts Regulation,[3] then imposed further the conditions complained of *supra*, the cumulative effect of which results in the punishment of pretrial detainees in violation of the Fourteenth Amendment to the U.S. Constitution." Doc. No. 1 ¶ 61.

A claim alleging Due Process violations under the Fourteenth Amendment involving conditions of confinement and pretrial detainees must establish that the conditions amounted to punishment. Bell v. Wolfish, 441 U.S. 520, 538–39 (1979). "Absent a showing of an expressed intent to punish on the part of detention-facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" Id. at 538 (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168–69 (1963)). Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment. Ford v. Bender, 768 F.3d 15, 24 (1st Cir. 2014).

Here, Plaintiffs allege that the cumulative effects of the lockdown policy amounted to punishment. They have not alleged any facts supporting the inference that Defendants intended to punish them. And, of course, allegations about the existence of lockdown restrictions without more cannot plausibly carry this claim—especially in the context of a global pandemic where

---

[3] Plaintiffs alleged Defendants violated one regulation, 105 Mass. Code Regs. 451.322 (2023). Doc. No. 1 ¶¶ 39–40. This regulation is only recommended by the Massachusetts Department of Health and not required. Compare 105 Mass. Code Regs. 451.011 (2023) with 105 Mass. Code Regs. 451.012 (2023).

jails had an interest in limiting the virus's spread to protect detainees and staff. Accordingly, the

Court DISMISSES Plaintiffs' claim for punishment of pretrial detainees.

### 7.   Cruel and Unusual Punishment

Echoing the previous claim, Plaintiffs allege Defendants knowingly failed "to correct

violations of several minimum health, sanitation, and safety standards adumbrated in the Code of

Massachusetts Regulation, then imposed further conditions complained of *supra*, the cumulative

effect of which results in the cruel and unusual punishment of convicted inmates in violation of

Amendment VIII to the U.S. Constitution." Doc. No. 1 ¶ 62.[4] Plaintiffs allege Defendants

violated one regulation, 105 Mass. Code Regs. 451.322 (2023), in support of their claim. Doc.

No. 1 ¶¶ 39–40. As explained in Section F, *supra*, that regulation lists public health

*recommendations* regarding the minimum size living space for incarcerated people; it does not

impose legally binding obligations on Defendants (or anyone else, for that matter). Plaintiffs

augment this claim by invoking the "cumulative effects" of the various lockdown policies

already described. Doc. No. 1 ¶ 65. Even taken together with all reasonable inferences, these

allegations fail to allege plausibly a violation of the Constitution's prohibition on punishment of

pretrial detainees. Plaintiffs must show that 1) the conditions of their confinement deny them the

minimal measure of necessities required for civilized living, and 2) Defendants were deliberately

indifferent to inmate health or safety. Surprenant v. Rivas, 424 F.3d 5, 18–19 (1st Cir. 2005).

---

[4] As pretrial detainees, the Eighth Amendment does not govern the conditions of their pretrial
detention—but the Due Process Clause of the Fourteenth Amendment does. Burrell v.
Hampshire Cnty., 307 F.3d 1, 7 (1st Cir. 2002); see also City of Revere v. Mass. Gen. Hosp., 463
U.S. 239, 244 (1983). The parameters of Plaintiffs' rights under the Due Process Clause "are
coextensive with the Eighth Amendment's prohibition against cruel and unusual punishment."
Surprenant v. Rivas, 424 F.3d 5, 18 (1st Cir. 2005). Accordingly, in light of the deference
accorded to pro se parties, the Court treats this claim as one arising under the Fourteenth
Amendment.

Here, Plaintiffs fail to allege any facts suggesting that Defendants' intent reached sufficiently culpable levels. For the foregoing reasons, the Court DISMISSES Plaintiffs' claim for cruel and unusual punishment.

8.    <u>Deprivation of Access to Medical Care</u>

Plaintiffs allege that "Defendant Udom did knowingly refuse to permit medications prescribed to plaintiffs in the community prior to incarceration, despite the prescriptions' validity, and thus arbitrarily denied access to the adequate medical care given to them prior to their incarceration, in violation of the Eighth and Fourteenth Amendments." Doc. No. 1 ¶ 63.

The Constitution guarantees detained persons access to adequate medical care. <u>Coscia</u>, 659 F.3d at 39. To state a claim for deprivation of such care, plaintiffs must plausibly allege that the deprivation was "objectively, sufficiently serious," and "that prison officials possessed a sufficiently culpable state of mind," i.e., that the prison officials acted with deliberate indifference to the serious medical needs of detainees. <u>Burrell</u>, 307 F.3d at 8 (citing <u>Farmer</u>, 511 U.S. at 834).

Here, Plaintiffs fail to allege plausibly either prong of the claim. They advance no factual allegations specific to each individual Plaintiff, his individual medical needs or conditions, or the types of medication he might require. Nor do they allege any facts suggesting that Defendant Udom was subjectively aware of these needs and chose to disregard them. For the foregoing reasons, the Court DISMISSES Plaintiffs' claim for deprivation of access to medical care.

9.    <u>Access to Courts</u>

One more claim remains. Plaintiffs allege that "Defendants Glynos, Doe, and Coppinger knowingly failed to permit access to a constitutionally adequate law library and by doing so, impeded Plaintiffs' ability to defend themselves in ongoing proceedings and substantially

15

obstructed challenges to the conditions of their confinement." Doc. No. 1 ¶ 55. Plaintiffs allege

in one paragraph that they suffered "a complete removal of Plaintiffs' access to the ECCF law

library," id. ¶ 44, but then confusingly allege only a few paragraphs later that they were

permitted "access to . . . library services . . . for 30 minutes every 48 hours," id. ¶ 48.

Plainly, Plaintiffs as detainees have a constitutional right of access to the courts,

grounded in the constitutional guarantees of equal protection and due process. Lewis v. Casey,

518 U.S. 343, 351–52 (1996); Bounds v. Smith, 430 U.S. 817, 821–22 (1977). Plausibly stating a

claim requires non-conclusory factual allegations detailing both the challenged policy and the

individual harm. Here, Plaintiffs merely allege a denial of the right in a conclusory manner, and

even as to that they contradict the assertion. Without more—and there is no more here—these

conclusory allegations fail to plausibly state a claim for denial of the constitutional right of

access to the courts. Accordingly, the Court DISMISSES Plaintiffs' claim for access to the

courts.

IV.     CONCLUSION

For the reasons explained above, the Motion to Dismiss (Doc. No. 45) is ALLOWED.  A

judgment of dismissal with prejudice shall enter.

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge